Joyce A. BRADSHAW, Plaintiff,

v.

Lawrence OBERG, Defendant.

Civ. A. No. 84–2663.

United States District Court,
District of Columbia.

June 23, 1988.

George R. Toney, Washington, D.C., for plaintiff.

Michael L. Martinez, Asst. U.S. Atty., Washington, D.C., for defendant.

## MEMORANDUM

JUNE L. GREEN, District Judge.

This matter is before the Court on defendant's motion for summary judgment ("Defendant's Motion"); plaintiff's opposition thereto; defendant's reply brief; supplemental memoranda submitted by both parties, and the entire record herein. For the reasons given below, the Court grants defendant's motion for summary judgment.

### I. *Statement of Facts*

On August 5, 1983, plaintiff found a watch and ring while cleaning the second-floor women's bathroom at the National Archives. The jewelry belonged to Carolyn Jane Barthol, a National Archives Records Service summer intern, who had inadvertently left them there. Plaintiff claims that she placed the lost articles in a plastic bag on her cart for safekeeping and continued with her assigned duties. Plaintiff alleges that her actions were in keeping with the policy of Nationwide Maintenance, Inc. ("Nationwide"), the cleaning service then under contract for maintenance work at the Archives, to turn in found personal items at the end of the shift.

After realizing that her jewelry was missing, Ms. Barthol returned to the bathroom to retrieve them only to find that the items had already been removed. She then reported the loss of her watch and ring to her supervisor who suggested that she go to the security office. Ms. Barthol followed this advice and met with Mr. Thomas Hall, a representative at the Archives for Security Associates International, a private firm under contract with the General Services Administration to provide security guards at the National Archives building.

She explained the situation to Mr. Hall and he then suggested that Ms. Barthol speak with defendant Oberg, the Supervisory Security and Administrative Officer at the Archives building.

Ms. Barthol informed defendant Oberg what had occurred and he decided to investigate the matter. He asked Ms. Barthol to remain in or near his office while he and Mr. Hall conducted the investigation. Defendant Oberg and Mr. Hall then proceeded to walk to the Archive's office of Nationwide.

Upon their arrival at the Nationwide office, defendant Oberg and Mr. Hall met with Mr. Donald Collier, one of plaintiff's immediate supervisors. Mr. Collier accompanied the defendant and Mr. Hall to search for the plaintiff. Plaintiff was located just outside the doorway to the Nationwide office as she was preparing to leave for the day. According to defendant Oberg, he approached plaintiff and questioned her about the watch and ring, being careful not to say "the watch and ring you found." In response to his inquiry, plaintiff states that she promptly reached into the plastic bag hanging on her cleaning cart, took out the jewelry, and handed them over to the defendant. Joyce A. Bradshaw Deposition filed on June 8, 1987 ("Bradshaw Deposition") at 13. Defendant claims, however, that plaintiff did not turn over the jewelry following his initial request. In his version of the incident, defendant states that plaintiff only produced the jewelry after he specifically asked about the watch and ring she found in the bathroom. According to defendant, plaintiff then responded, "Oh, the watch and ring" and retrieved from a bag on the side of her cart the watch and ring, both of which defendant claims were "either in another bag within the bag or separately wrapped in used paper towels." Id. at 5. Plaintiff claims that neither item was wrapped in used paper towels as alleged by defendant.

Based on defendant's and Mr. Hall's impressions that plaintiff had attempted to be evasive and hide the fact she had the watch and ring, defendant Oberg returned to his office and instructed a guard to telephone the Federal Protective Service ("FPS") to report the incident. Defendant Oberg also requested that plaintiff speak with the FPS officers upon their arrival. Plaintiff, however, had already clocked out for the day and gone outside the National Archives building to catch a bus ride home. Plaintiff's supervisor, Jean Jenkins, sent another maintenance worker to catch up with plaintiff at the bus stop and ask her to return to the building. Plaintiff returned to the building and claims that she was greeted by FPS security guards who questioned her about the incident.

Meanwhile, defendant Oberg had returned to his office to give back the watch and ring to Ms. Barthol. He then asked Ms. Barthol whether or not she wished to press charges against plaintiff. Ms. Barthol stated that she did not know what to do and asked for his advice. Carolyn J. Barthol Deposition filed on July 8, 1987 ("Barthol Deposition") at 16. According to Ms. Barthol, defendant explained to her that she could either press charges or not and that decision had to be her own. Id. He further stated that "[I]f [Ms. Barthol] did press charges, it would help in other situations that might occur—similar to [hers] . . . and if [she] didn't, nothing would ever be rectified or helped. . . ." Id. At that point, Ms. Barthol asked to call her parents in Georgia for advice. Thereafter, she decided to press charges. Subsequently, Ms. Barthol, Mr. Hall and defendant Oberg were questioned by two FPS officers. After providing their statements, defendant claims that he and Ms. Barthol left for the day.

After the FPS officers had questioned all parties involved in the incident, Sergeant Leonard M. McDonald of the FPS arrested the plaintiff. Ms. Peggy Dolford, a female security officer then employed at the Archives by Security Associates, was then ordered to strip search the plaintiff. Plaintiff claims that defendant Oberg ordered the FPS to conduct the search while defendant contends that he had nothing to do with it and was completely unaware that it had occurred. Defendant asserts that Sergeant McDonald ordered Ms. Dolford to

search the plaintiff and points to Sergeant McDonald's declaration which confirms his assertion. Ms. Dolford escorted plaintiff into a nearby room and asked her to remove her outer garments where she saw nothing of a contraband nature.

Upon completion of the strip search, plaintiff was accompanied by the FPS officers and Ms. Dolford to an FPS building for processing. Plaintiff was then released into the custody of the Metropolitan Police and kept overnight in jail. The next morning at approximately 8:00 a.m., plaintiff was taken to Superior Court where an Assistant United States Attorney decided to "no paper" charges against plaintiff since "[plaintiff] had been dismissed from her job," "the security officer [defendant Oberg] had barred her from the [Archives] building, and because she did not have a previous record." *See* Defendant's Memorandum of Points and Authorities ("Defendant's Memorandum"), Exhibit 5 at 1.

On Monday, August 8, 1983, plaintiff arrived at work and was informed by her supervisor, Ms. Jean Jenkins, that Nationwide was dismissing her. On that same day, Ms. Patricia Freeman, a member of defendant Oberg's staff, prepared and issued a memorandum "barring" plaintiff from the Archives building pursuant to instructions given by defendant Oberg on August 5, 1983, the day of the incident in question. *See* Defendant's Memorandum, Exhibit 7. Sometime later, plaintiff requested that defendant withdraw the memorandum but he declined for two reasons. First, he thought that he had a reasonable basis for his belief that plaintiff tried to steal the watch and ring, and second, because the FPS report indicated that the charges had been dropped against plaintiff due in part to her having been barred from the Archives building.

On August 29, 1983, plaintiff filed a claim with the D.C. Office of Human Rights, claiming that Nationwide dismissed her as a result of racial discrimination. Thereafter, plaintiff filed the original complaint in this matter in August 1984 in the Superior Court of the District of Columbia.

This action was then removed to this Court on August 29, 1984.

The original complaint in this matter sought $100,000 in damages for the common law torts of false imprisonment, assault and battery, false arrest, and intentional infliction of emotional distress. Following defendant's first motion to dismiss or for summary judgment, plaintiff amended her complaint to allege unconstitutional violations of her fourth and fifth amendment rights and opposed defendant's motion. By memorandum opinion filed July 26, 1985, this Court granted defendant's motion as to the alleged common law torts and denied defendant's motion as to the alleged constitutional torts. Defendant filed a motion for reconsideration and requested permission from the Court to file a motion to dismiss or for summary judgment on the issue of qualified immunity which had not been briefed previously.

The Court granted defendant's motion for reconsideration and defendant filed a second motion to dismiss or for summary judgment. On November 20, 1985, the Court denied defendant's second motion to dismiss or for summary judgment. The Court determined, *inter alia*, that a genuine issue existed as to whether defendant ordered plaintiff's strip search. *Bradshaw v. Oberg*, No. 84-2633, slip op. at 6 (D.D.C. Nov. 20, 1985). The Court further determined that "if plaintiff's allegations in this case [were] true, a trier of fact could find that no objective facts in either parties' version justified the ordering of a strip search and that defendant exceeded permissible constitutional bounds by his actions." *Id.* at 11. Accordingly, the Court concluded that defendant was not entitled to qualified immunity.

Defendant appealed the Court's decision to the United States Court of Appeals for the District of Columbia Circuit. The Court of Appeals held that the "[defendant's] motion for summary judgment was properly rejected by the District Court because the affidavits failed to develop essential and uncontroverted facts a court would need to determine the preliminary issue presented by this appeal of whether or not

**34**

[defendant] ordered [plaintiff] to be strip-searched." *Bradshaw v. Oberg* [808 F.2d 137 (Table)] (D.C.Cir.1987). While the Court of Appeals affirmed this Court's order denying defendant's summary judgment motion on the fourth amendment claim, it also held that "[defendant was] free to renew its motion for summary judgment if relevant facts are discovered, by [plaintiff's] deposition or otherwise, which establish that [defendant] was not responsible for the alleged fourth amendment violations." *Id.*

Moreover, the Court of Appeals affirmed this Court's order "rejecting [defendant's] claim of qualified immunity because if [defendant] ordered [plaintiff] to be strip-searched, then he should have known that this conduct violated [plaintiff's] clearly established fourth amendment right to be free of unreasonable search." *Id.* at 2. Finally, the Court of Appeals ordered this Court "to examine, for the first time, plaintiff's fifth amendment claim stemming from [defendant's] memorandum barring [plaintiff] from the National Archives building." *Id.*

In light of the Court of Appeals decision and after an extensive period of discovery, defendant has again moved for summary judgment on plaintiff's fourth amendment claim relating to her strip search and plaintiff's fifth amendment claim relating to the memorandum barring her from the National Archives. In the alternative, defendant claims that he is entitled to qualified immunity as to both constitutional tort claims should he be found to have violated plaintiff's constitutional rights.

II. *Conclusions of Law*

A. *Fourth Amendment Claim*

■ The plaintiff alleges that defendant Oberg violated her fourth amendment rights when he allegedly ordered FPS to strip search her after her arrest at the Archives. Defendant had denied steadfastly that he ever ordered a strip search of plaintiff. He claims instead that Sergeant Leonard M. McDonald of the FPS ordered the strip search of plaintiff. After a careful examination of the entire record in this case, the Court finds that defendant Oberg has established through additional discovery that he did not order the strip search of plaintiff.

Defendant Oberg submitted several depositions, declarations, and affidavits of persons present at the time of the arrest and/or strip search of plaintiff in support of his contention. All of these persons stated that defendant Oberg did not order the strip search of the plaintiff, *see* Declaration of Thomas Hall ¶ 3, Defendant's Memorandum, Exhibit 3; Declaration of Peggy Dolford ¶¶ 5, 7, Defendant's Memorandum, Exhibit 4, or that they did not hear him order the strip search. Barthol Deposition at 30, lines 9–10; Deposition of Jean Jenkins filed on July 17, 1987 at 17–18, and Deposition of Donald Collier filed on August 3, 1987 at 26–27.

The most persuasive evidence submitted by defendant, however, includes the deposition testimony of plaintiff and the declaration of Sergeant Leonard M. McDonald. During her deposition, plaintiff admits readily that she did not know whether defendant Oberg ordered her strip searched. Bradshaw Deposition at 31–32, lines 11–25 and line 1; 33–34, line 25 and lines 1–7. The declaration of Sergeant McDonald presents direct evidence that defendant Oberg did not order the strip search of plaintiff. In his declaration, Sergeant McDonald states that he "asked Ms. Dolford, a contract guard at the Archives, to search Ms. Bradshaw for weapons" before she was transported to another location for processing. Declaration of Leonard M. McDonald, Sr. filed on January 26, 1988 ¶ 5. Sergeant McDonald further states that "Mr. Oberg did not order [him] to arrest Ms. Bradshaw or to have her searched." *Id.* ¶ 9.

The above-stated admission by plaintiff and the declaration of Sergeant McDonald, as well as the other depositions, affidavits, and declarations of persons present at the time of plaintiff's arrest and search support overwhelmingly defendant's claim that he did not order plaintiff to be strip searched. Accordingly, the Court finds that since there no longer remains a genuine issue as to this material fact, defendant

is entitled to summary judgment as to plaintiff's fourth amendment claims.

### B. *Fifth Amendment Claim*

 Plaintiff claims that defendant Oberg violated her liberty and property interests under the Fifth Amendment of the Constitution when he issued the memorandum barring her from the Archives. She further claims that this memorandum was issued without any due process and as a result of it, she lost her job as a maintenance worker. Assuming *arguendo* that plaintiff states a valid constitutional violation under the fifth amendment, the Court finds that the only remedy available to her is a due process hearing where she could be afforded an opportunity to be heard in a meaningful manner. This remedy, however, lies against an agency and not an individual employee of an agency. *See Holland v. Atterbury,* No. 86–3303, slip op. at 5 (D.D.C. May 22, 1987) [available on WESTLAW, 1987 WL 47764]. Since the defendant is being sued in his individual capacity [1] and the Archives is not a party to this action, the defendant is entitled to summary judgment as to plaintiff's fifth amendment claim.

### III. *Conclusion*

In light of the foregoing, the Court finds that defendant is entitled to summary judgment as to plaintiff's fourth and fifth amendment claims and grants defendant's motion.

---

1. The caption on plaintiff's amended complaint states that defendant Oberg is being sued both in his individual and official capacities. However, the only way the suit could have been proper as to defendant "officially" is if the United States had been sued pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680 (1982), within two years of the accrual of her cause of action (*e.g.,* August 5, 1985). 28 U.S.C. § 2401(b). Since plaintiff never filed the prerequisite administrative tort claim against defendant Oberg or the United States, plaintiff's suit is against defendant Oberg in his individual capacity only.